637 So.2d 127 (1994)
Ileana M. Santos MONTALVO, et al.
v.
Brian SONDES, et al.
No. 93-CC-2813.
Supreme Court of Louisiana.
May 23, 1994.
*128 Richard J. Tyler, Katy K. Theriot, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for applicants.
Anthony C. D'Antonio, Metairie, for respondents.
MARCUS, Justice.[*]
At issue in this case is whether an attorney sued by a former client in malpractice has a cause of action against his former client's new attorneys based on their filing of the malpractice suit.
Ileana M. Montalvo and Hector E. Montalvo were engaged in a custody battle over their minor child, Ileana Sharee Montalvo. By orders of the Virginia court dated September 10, 1990 and October 4, 1990, Ms. Montalvo and Mr. Montalvo were given joint custody of the child, with Ms. Montalvo designated primary residential parent and Mr. Montalvo given visitation rights. The orders recognized that Ms. Montalvo intended to *129 vacate the marital residence in Virginia and move to Louisiana to live with her parents.
Once in Louisiana, Ms. Montalvo hired attorneys Brian Sondes and E. Martin Fontaine to represent her. On December 19, 1990, Sondes and Fontaine filed a "motion to establish child custody jurisdiction and request for TRO" in Louisiana. The motion sought emergency jurisdiction in Louisiana, based on allegations of sexual abuse. The court issued a temporary restraining order prohibiting Mr. Montalvo from removing the child from the jurisdiction and exercising any unsupervised visitation. On December 23, 1990, Mr. Montalvo filed a motion to vacate the temporary restraining order, on the ground that the sexual abuse allegations were blatantly frivolous and misleading, having been previously addressed by the Virginia Child Protection Services and deemed unfounded. Mr. Montalvo asserted that under the Virginia custody order, he had visitation with his daughter over the Christmas holidays. As a consequence of that motion, the temporary restraining order was vacated; however, Ms. Montalvo refused to relinquish the child. On December 26, 1990, the trial court issued an ex parte order, ordering immediate transfer of the child to Mr. Montalvo. On January 7, 1991, Mr. Montalvo filed a petition for writ of habeas corpus, based a January 4, 1991 order of the Virginia court granting temporary custody to him. Ms. Montalvo was not present at the January 25, 1991 hearing on the petition, but was represented by Sondes. The trial court granted the petition, ordering immediate transfer of the child to her father. The court also ordered Ms. Montalvo to pay $500 in sanctions for filing "a false and fraudulent pleading alleging sexual abuse," ordered her to pay $500 per day for each day she failed to return the child, and ordered her to pay attorney fees and costs.
Ms. Montalvo terminated the employment of Sondes and Fontaine and sought help from the Loyola Law School Clinic in appealing the January 25, 1991 judgment against her. While that appeal was pending, Ms. Montalvo hired attorneys Scott R. Bickford and Regina O. Matthews, who filed a legal malpractice claim on her behalf against Sondes and Fontaine on December 6, 1991. That petition alleged that Sondes and Fontaine failed to inform Ms. Montalvo that re-allegation of the child abuse claims previously determined to be unfounded by the Virginia authorities could subject her to liability and sanctions. It was also alleged that Ms. Montalvo did not appear at the January 25, 1991 hearing on the advice of Sondes, thus making her unavailable to testify at the hearing and resulting in the immediate transfer of legal custody of the child to her father.
On December 30, 1991, the court of appeal rendered its decision in the appeal of the January 25, 1991 judgment. The court reversed the judgment insofar as it ordered Ms. Montalvo to pay $500 per day for each day she failed to return the child. In all other respects, the judgment was affirmed. Montalvo v. Montalvo, 592 So.2d 904 (La. App. 5th Cir.1991).
On July 22, 1992, Sondes filed a "reconventional demand and third party demand" against Ms. Montalvo and her attorneys, Bickford and Matthews. The petition alleged that the malpractice suit filed by Bickford and Matthews was "instigated in bad faith," since the court of appeal had reversed the award of sanctions against Ms. Montalvo, and Mr. Montalvo had expressly waived his right to pursue the Louisiana judgment as part of a consent judgment in Virginia. In response, Bickford and Matthews filed an "exception of no cause and no right of action." The trial court denied the exception.[1] Bickford and Matthews applied to the court of appeal, which denied their application for writs. They then applied to this court, which granted and remanded the case to the court of appeal for briefing, argument and opinion.[2] On remand, the court of appeal affirmed the ruling of the trial court denying the exception *130 of no cause of action.[3] Upon application of Bickford and Matthews, we granted certiorari to consider the correctness of that decision.[4]
The sole issue before us is whether Sondes has a cause of action against Bickford and Matthews based on their filing of the malpractice petition against him on behalf of Ms. Montalvo.
Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf. A non-client, therefore, cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation. The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of loyalty owed to a client. Penalber v. Blount, 550 So.2d 577 (La.1989). Although Penalber re-affirmed the basic premise that an attorney acting on behalf of his client may not be sued by an adversary based on negligence or malpractice, that case did allow a cause of action against an attorney based on intentional tort:
Intentionally tortious actions, ostensibly performed for a client's benefit, will not shroud an attorney with immunity. Consequently, even though an attorney does not generally owe a duty to his client's adversary, under the broad ambit of LSA-C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct....
550 So.2d at 582.
Of course, identifying an intentional tort in the context of an attorney's actions may be more difficult than identifying a traditional intentional tort. It is clear that the mere filing of a lawsuit, even if the suit appears meritless on its face, is not enough, since the attorney may be simply the instrument through which the client invokes judicial determination. Spencer v. Burglass, 337 So.2d 596 (La.App. 4th Cir.1976), writ denied, 340 So.2d 990 (La.1977). Rather, we believe it is essential for the petition to allege facts showing specific malice or an intent to harm on the part of the attorney in persuading his client to initiate and continue the suit. For example, in Penalber, we found the facts of the petition indicated that the attorney (Connelly) acted with full knowledge that his conduct would cause direct harm to the adverse party:
The petition asserts Connelly knew he was violating prohibitory laws when he seized public assets. The petition disclaims notions of Connelly's good faith noncompliance of the prohibitory provisions. Instead, it alleges intentional, even calculated, misconduct performed for both Connelly and his client's benefit, causing direct harm to the adverse litigant.

550 So.2d at 582 (emphasis added).
Thus, our inquiry is narrowed. Sondes' petition will not state a cause of action if it alleges only negligence or malpractice on the part of Bickford and Matthews; rather, the facts in his petition must establish that Bickford and Matthews intended to cause direct harm to Sondes by filing the malpractice petition on Ms. Montalvo's behalf. With these precepts in mind, we now consider Sondes' petition.
The relevant paragraphs of Sondes' petition allege:
VII.
Defendants-in-reconvention filed the subject Petition for Damages in a frivolous attempt to collect sanctions and attorneys fees and costs allegedly awarded to Mr. Hector Montalvo....
* * * * * *
XII.
Plaintiff-in-reconvention avers that the defendants-in-reconvention, Ileana M. Montalvo and her attorneys for the present action, Scott R. Bickford and Regina O. Matthews, knew of, or could have been fully appraised [sic] of the foregoing proceedings by conducting a simple investigation.

*131 XIII.
Plaintiff-in-reconvention further avers that the present proceeding was instigated in bad faith; and that all defendants-in-reconvention have continued in bad faith, as exemplified by their entering a preliminary default against your plaintiff-in-reconvention[5] after the Fifth Circuit Court of Appeals ruling in December 30, 1991 and after the January 8, 1992 Consent Judgment was rendered in Virginia.
XIV.
Defendants-in-reconvention, Scott Bickford and Regina O. Matthews, are guilty of malpractice in that they have filed, and are conducting a suit which they know to be frivolous and in contravention of the Code of Civil Procedure Article 863.
In deciding whether a petition states a cause of action, a court must accept the facts alleged in the petition without reference to any extraneous supporting or controverting evidence. La.Code Civ.P. art. 931; Robinson v. North American Royalties, Inc., 470 So.2d 112 (La.1985). The court must accept well pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Everything on Wheels Subaru, Inc. v. Subaru South, 616 So.2d 1234 (La.1993); Kuebler v. Martin, 578 So.2d 113 (La.1991). However, Louisiana retains a system of fact pleading. La.Code Civ.P. art. 854, official revision comment (a). The mere conclusion of the pleader unsupported by facts does not set forth a cause or right of action. Latham v. Latham, 216 La. 791, 44 So.2d 870 (1950); In re Phoenix Building & Homestead Association, 203 La. 565, 14 So.2d 447 (1943).
Having reviewed Sondes' petition, we find it fails to allege facts sufficient to state a cause of action in intentional tort. Sondes' allegations that the malpractice suit filed by Bickford and Matthews is "frivolous" and was instigated and continued in "bad faith" are mere conclusions unsupported by facts.[6] Reduced to its essentials, Sondes' petition simply alleges that Bickford and Matthews failed to apprise themselves of the status of the appeal or the Virginia consent judgment prior to filing or continuing the malpractice suit, and making certain allegations in their petition that were no longer true in light of these proceedings.[7] At best, these actions might be considered negligent, but they fall far short of manifesting an intent on the part of Bickford and Matthews to cause direct harm to Sondes. Since the facts alleged in the petition are not sufficient to give rise to an intentional tort, the trial court erred in failing to sustain the exception of no cause of action.
In addition to the failure to allege sufficient facts to state a cause of action, we further find Sondes' petition is deficient because it has been brought prior to a successful judgment in his favor in the underlying malpractice suit. In the analogous tort of malicious prosecution, it is well settled that a necessary element of the cause of action is the bona fide termination of the underlying judicial proceeding in favor of the party asserting malicious prosecution. Johnson v. Pearce, 313 So.2d 812 (La.1975); Robinson v. Goudchaux's, 307 So.2d 287 (La.1975). We believe such a requirement should be applied with equal force to situations where a non-client files an intentional tort claim against his adversary's attorney based on the filing *132 of a pending lawsuit. As we recognized in Penalber, there is a danger that suits filed against an adversary's attorney may tend to create a chilling effect on the practice of law and a division of the loyalty owed to the client. By requiring that such suit may not be maintained until after the underlying suit is successfully concluded, these dangers are essentially eliminated. In addition, by requiring the underlying suit to be successfully concluded prior to the filing of the intentional tort suit, there will be no incentive for a party to attempt to collaterally litigate the underlying suit via the intentional tort suit.[8] Therefore, since Ms. Montalvo's suit has not yet been concluded in Sondes' favor, we find this is an additional reason for sustaining the exception of no cause of action.
In sum, we hold that Sondes' petition against Bickford and Matthews does not state a cause of action in intentional tort. The trial court erred in denying the exception of no cause of action filed by Bickford and Matthews and in failing to dismiss Sondes' action.[9]

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The exception of no cause of action filed by Scott R. Bickford and Regina O. Matthews is sustained, and the third party demand filed by Brian Sondes against them is ordered dismissed. All costs are assessed to Brian Sondes.
ORTIQUE, J., concurs with reasons.
CALOGERO, C.J., concurs and will assign reasons.
ORTIQUE, Justice, concurring.
I fully subscribe to the majority decision. However, there are certain elements mentioned therein which, in my opinion, require additional emphasis.
In Penalber v. Blount, 550 So.2d 577, 581 (La.1989), this court reaffirmed basic principles of our adversarial system:
Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting on his client's behalf. (citations omitted.) A non-client, therefore, generally cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation. The intent of this rule is not to reduce an attorney's responsibility for his work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed a client. (citation referenced omitted.)
An attorney's duty is to zealously represent his client. To accomplish this obligation, adversarial counsel must not be hampered by the fear of personal liability for negligently injurying (sic) his client's opponent ... (emphasis added).
In Penalber, the client did not instigate or pursue the intentionally tortious conduct. The attorney himself devised the plan to garnish oil and gas revenues belonging to the Livingston Parish Police Jury, and then acted upon it, allegedly after having been warned in court that seizure of the assets would be in violation of the constitution and statutory provisions of this state, and without providing the police jury with proper notice and service of the seizure. Though ostensibly made for his client's benefit, the seizure was also self-serving as payment of his contingency fee[1] rested on the satisfaction of *133 the judgment obtained against the police jury. As a result of the wrongful seizure, the police jury lost use of approximately $30,000 of its revenues.
Compare those facts to those alleged in this case. Blatant differences exist between the wrongful conduct alleged in Sondes' petition and Penalber's intentionally tortious conduct. Connelly actually seized public funds immune from seizure in direct violation of statute and constitution, without proper notice and service, then hid behind his client asserting he owed no duty to the police jury! Whereas, if it is assumed that Matthews and Bickford's filing of the malpractice action and/or their continued prosecution of the suit was in bad faith, all that is alleged is a violation of LSA-C.C.P. art. 863, a remedial provision which contains its own penalty but does not create a separate cause of action.
The general rule that an attorney does not owe a legal duty to his client's adversary when acting on his client's behalf, is to prevent a chilling effect on the adversarial practice of law, to prevent a division of the loyalty owed a client, and to encourage the attorney's zealous representation of his client. The rule of Penalber exists to prevent intentional tortfeasor's from escaping accountability for their tortious conduct by imputing it to their client or hiding behind their client. Sondes' tort claim, setting forth "minor" violations of LSA-C.C.P. art. 863, is inconsistent with this rule. His claim is critically deficient of the tort elements required by Penalber's example and serves only to cast a chilling effect on the adversarial system. The majority properly found his petition fails to set forth a cause of action.
The pronouncement of this case continues the rule of Penalber unadulterated and untainted. The public's interest in the preservation of an adversarial system of juridical pursuits must continue unfettered and undeterred!
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Lemmon, J. was not on the panel which heard and decided this case. Charles A. Marvin, Chief Judge, Court of Appeal, Second Circuit, sitting in place of Justice James L. Dennis.
[1] Earlier, Fontaine had filed an "answer and reconventional demand" making nearly identical allegations against Bickford and Matthews. In response, Bickford and Matthews filed exceptions of no cause of action and no right of action. The same trial judge maintained the exceptions and dismissed Fontaine's reconventional demand with prejudice. That judgment is not before us.
[2] 615 So.2d 332 (La.1993).
[3] 625 So.2d 659 (La.App. 5th Cir.1993).
[4] 631 So.2d 1151 (La.1994).
[5] The record does not reveal that a preliminary default was entered against Sondes.
[6] For the same reasons, Sondes' allegation that Bickford and Matthew's suit was filed in contravention of La.Code Civ.P. art. 863 is a mere conclusion unsupported by fact. Moreover, federal courts interpreting Fed.Rule of Civ.Proc. 11, which is the source of art. 863 (which provides sanctions for improper pleadings), have concluded that it does not create a private cause of action, but is rather a remedial tool available to the court. See Port Drum Co. v. Umphrey, 852 F.2d 148 (5th Cir.1988); United States v. Articles of Drug, 601 F.Supp. 392 (D.Neb.1984).
[7] It should be noted that the filing of the malpractice suit (December 6, 1991) predated both the court of appeal's judgment (December 30, 1991) and the consent judgment (January 8, 1992). Moreover, even assuming that these judgments eliminated Ms. Montalvo's monetary damages, she still may have damages for emotional distress in connection with the loss of custody of her child, possible attorney fees in connection with the appeal, etc.
[8] For example, in the present case, the allegations made by Sondes in his reconventional and third party demand are really in the nature of defenses to liability and damages in the malpractice claim. It makes more sense for these issues to be resolved in the context of Ms. Montalvo's malpractice claim, rather than in the context of Sondes' claim against Ms. Montalvo's attorneys.
[9] Under La.Code Civ.P. art. 934, "[w]hen the grounds of objection pleaded by the peremptory exception may be removed by amendment, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed." In the present case, since one of the grounds of the objection cannot be removed, i.e., the underlying malpractice claim is still pending, Sondes' action must be dismissed.
[1] The attorney, Michael R. Connelly, retained as fees and costs $13956.68 of the $29,593.37 he received from the garnishment of the police jury's Amoco Production Company mineral lease royalties.