Judgment rendered November 16, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,798-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ROBBY LEE MCDONALD AND          Plaintiffs-Appellants
ANNETTE MCDONALD

versus

MELISSA BOWEN, EARL ROSS          Defendants-Appellees
DOWNS, JR., THE DOWNS
LAW FIRM, APLC AND ABC
INSURANCE COMPANY

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 19-2382

Honorable Wilson Rambo, Judge

* * * * *

THE BEZOU LAW FIRM          Counsel for Appellants
By: Jacques F. Bezou
    Jacques F. Bezou, Jr.
    Payton S. Lachney


HAYES, HARKEY, SMITH &          Counsel for Appellees,
CASCIO, LLP                     Earl Ross Downs, Jr.
By:  Thomas M. Hayes, III       and The Downs Law
                                Firm, APLC


* * * * *

Before PITMAN, STONE, and MARCOTTE, JJ.

**PITMAN, J.**

Plaintiffs Robby and Annette McDonald appeal the judgment of the trial court sustaining an exception of no cause of action and dismissing their suit for malicious prosecution, defamation and breach of contract against Defendants Earl Ross Downs, Jr. and the Downs Law Firm, APLC (collectively, "Downs").[1]  For the following reasons, we affirm the trial court's judgment.

## FACTS

The McDonalds' petition alleged that in 2013, they rented Melissa Bowen a mother-in-law apartment, which was located near their home at 445 Ed Edelen in Monroe.  The McDonalds did not occupy the main home on the property but kept it so that their adult children could stay there when they visited.  The lease stated that in exchange for a lower rent amount, Bowen was to live in the apartment, keep watch over the main house and contact them about any problems that might arise.  A key to the main house was kept in an unused mailbox located on the side of the apartment.  They only informed Bowen about the key when a sewage problem occurred in the apartment, at which time they gave her permission to use the key and enter the main house to access the bathroom facilities until the sewage problem was resolved.  They fixed her bathroom and returned the key to the mailbox.  They did not give her permission to enter their home again.

---

[1] Also named as defendants in the suit were Melissa Bowen, who was Downs' client in the original suit against the McDonalds, and Downs' alleged insurer, ABC Insurance Company.  Neither Bowen nor the insurer were parties to the exception of no cause of action at issue in this appeal.

Bowen, however, used the key to again enter the house on December 22, 2013, claiming to have heard a buzzing noise coming from the attic. She went to an open room above the garage, where she noticed a door at the end of the room and thought the buzzing noise was coming from behind the door. She claimed she entered the door and then fell through a hole in the floor, landing 12 feet below on the garage floor concrete and sustaining injuries. The next day she asked a friend to take pictures of the hole in the floor and, once again, entered the premises without permission. Eventually she was evicted from the apartment. In retaliation, she went into the McDonalds' garage and damaged a classic car with a key.

Bowen filed suit in Ouachita Parish against the McDonalds and Foremost Insurance Company. After exhaustive discovery, the McDonalds' attorney informed her attorney, Downs, that the lawsuit was frivolous and the facts showed that not only was she a trespasser in their home at the time of the accident, it was impossible for her to fit through the hole she claimed to have fallen through. The opening was 12.5 by 15 inches. At the time of the accident, she was 5'6" tall and weighed 180 pounds. Her body exhibited no injuries that would have been expected from falling through the opening, especially since there were exposed nails in the hole. Downs continued to prosecute the suit and even had a video made of Bowen recreating her fall through the hole by making a "pencil dive" (or jump) maneuver. The video allegedly was significantly different from her own explanation of how she fell; and, on cross-examination, she stated that "they" told her to demonstrate her fall that way.

Discovery revealed that Bowen was a person with a long history of mental illness and treatment by psychiatrists for psychotic behavior,

including self-harming, delusions and paranoia. It was after the discovery of her mental health issues that the McDonalds tried to convince Downs to dismiss the lawsuit for lack of good faith. They refused.

A jury trial was held; and, at the close of Bowen's case, the McDonalds filed a motion for directed verdict on the issue of liability, which the trial court denied. The jury rendered a special verdict in the McDonalds' favor, finding in response to two interrogatories that Bowen did not have express, legal or implied authority to be in their home at the time of the accident and that their home did not contain a defect that injured her. They were relieved of all liability. Bowen was assessed with over $48,800 in litigation costs.

The McDonalds filed the instant suit against Downs and Bowen and alleged that Bowen's lawsuit had been maliciously brought, that she had breached her lease agreement, that she was trespassing when she entered their home and that she caused damage to their home and belongings. They further alleged that Downs acted maliciously in drafting and filing the petition and in prosecuting the action and that they did so for the primary purpose of attempting to force them to settle the action when there was no merit to their client's claim. They alleged that they had suffered significant damages, including financial, emotional and physical distress. They claimed that they have incurred attorney fees and out-of-pocket litigation expenses in defense against the malicious prosecution.

The McDonalds also filed a claim for defamation against Downs, stating that Downs and Bowen made false allegations against them to cover up her breach of contract and unlawful trespass which damaged their home. They also alleged that Bowen injured Robby McDonald's professional and

3

business reputation because the false allegations were made in a public lawsuit and published to third persons.

The McDonalds were unable to serve Bowen via the Long Arm Statute, but their request for appointment of an attorney to receive service of process was granted. A court-appointed attorney answered for her but then notified the court that she was unable to locate Bowen after advertisement in a paper in Missouri where she was thought to have moved. The McDonalds later amended their petition to assert that Bowen had died in April 2020.[2]

Downs filed an exception of no cause of action and argued that the McDonalds failed to assert facts essential to state a cause of action against them. Specifically, Downs argued that they were obligated to zealously represent their client and to present her claims to the trier of fact for resolution and that the fulfillment of those duties does not constitute malicious prosecution nor defamation. They contended there were no specific allegations of either malicious prosecution or defamation set forth in the petition.

The McDonalds opposed the exception of no cause of action; and, although the trial court sustained the exception, it gave them leave to amend. They attempted to amend their petition to state with specificity the factual basis for their suit for malicious prosecution. The trial court considered the amended petition and noted that there appeared to be no absolute bar to the assertion of a damage claim against a lawyer or firm arising out of the conduct of representing a client to the trier of fact. It also noted that a

---

[2] The McDonalds moved to substitute Bowen's estate as a defendant in this suit but have taken no further action against her estate, and the estate was not served. ABC Insurance Company, although named as a defendant insurer of Downs, was never served and made no appearance.

4

person suing a lawyer or firm must allege specific facts relating to the claim of malice in such cases. It found that the amended petition lacked the necessary specificity for a cause of action in malice and that "conclusory allegations are insufficient." It also found that the amended petition was silent with regard to the claim for defamation. For those reasons, it sustained the objection and dismissed the entire suit against Downs. The McDonalds now appeal the judgment sustaining the exception of no cause of action in regard to their claim for malicious prosecution.[3]

**DISCUSSION**

The McDonalds argue that the trial court erred in finding that Louisiana law imposes a heightened standard of pleading malice when a person is suing an attorney for malicious prosecution. They contend that discovery in Bowen's case should have alerted the attorney to the fact that his client's claim against them was frivolous, yet he coached her to demonstrate her fall in the only way possible to make them liable for her accident. They also argue that their petition contains every allegation necessary for them to assert a cause of action for malicious prosecution.

The McDonalds further argue that the law provides that malice may be pled generally, rather than specifically, and that malice in a case of malicious prosecution is defined as that which exists where the charge is made with knowledge that it is false or with a reckless disregard to whether it is false. They assert that the standard is that malice must be pled rather than negligence.

---

[3] The appeal is silent on the issue of defamation.

Downs argues that the trial court correctly sustained their exception of no cause of action for several reasons. They contend they had an obligation to Bowen to vigorously pursue her claim against her lessors when she was injured by a defect on their property. They point out that if the case they filed against the McDonalds was so frivolous or pointless, the trial court would have granted their motion for a directed verdict that they filed at the close of Bowen's case. However, it denied the motion for directed verdict; and the merits were referred to the jury, which resulted in a finding in favor of the McDonalds. They argue that they owed no duty to the McDonalds for actions taken on behalf of Bowen unless they committed an intentional tort against them. They assert that the petition does not state a cause of action for intentional tort or malicious prosecution.

In deciding whether a petition states a cause of action, a court must accept the facts alleged in the petition without reference to any extraneous supporting or controverting evidence. La. C.C.P. art 931; *Arledge v. Sherrill*, 32,189 (La. App. 2 Cir. 8/18/99), 738 So. 2d 1215, *writ denied*, 99-2713 (La. 12/10/99), 751 So. 2d 255. The court must accept well-pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *Id*. However, under the system of fact pleading retained by Louisiana, the mere conclusion of the pleader unsupported by facts does not set forth a cause or right of action. *Id*. *See* La. C.C.P. art. 854.

The elements which must be established to prevail in a malicious prosecution action are the following: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by

6

the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for the original proceeding; (5) the presence of malice therein; and (6) damage resulting to the plaintiff. *Plessy v. Hayes Motor Co.*, 31,947 (La. App. 2 Cir. 6/16/99), 742 So. 2d 934. Malice exists where the charge is made with knowledge that it is false or with reckless disregard as to whether it is false. *Id.*

Intentionally tortious actions, ostensibly performed for a client's benefit, will not shroud an attorney with immunity. *Penalber v. Blount*, 550 So. 2d 577 (La. 1989). Consequently, even though an attorney does not generally owe a duty to his client's adversary, under the broad ambit of La. C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct. *Id.*

Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf. *Montalvo v. Sondes*, 637 So. 2d 127 (La. 1994). A non-client, therefore, cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation. *Id.* The intent of this rule is not to reduce an attorney's responsibility for his or her work but, rather, to prevent a chilling effect on the adversarial practice of law and to prevent a division of loyalty owed to a client. *Id.* A litigant who wishes to sue his adversary's attorney must show that the attorney acted with a specific malice or intent to personally inflict direct harm upon his client's adversary and with full knowledge that his conduct would cause such harm. *In re Succession of Carroll*, 46,327 (La. App. 2 Cir. 7/20/11), 72 So. 3d 384, *citing Montalvo*, *supra*.

The mere filing of a lawsuit, even if the suit appears meritless on its face, is not enough, since the attorney may be simply the instrument through which the client invokes judicial determination. *Succession of Carroll*, *supra*. It is essential for the petition to allege facts showing specific malice or an intent to harm on the part of the attorney in persuading his client to initiate and continue the suit. *Montalvo*, *supra*.

The trial court allowed the McDonalds to amend their first petition to state a cause of action against Downs. The amended petition cited the elements for a claim of malicious prosecution and then alleged in conclusory terms that Bowen's lawsuit against them was filed without probable cause and with malice. The allegations reiterated their claim that Downs coached Bowen on how to present the incident so that they would be found at fault. They also alleged that Bowen admitted that Downs had "instructed me to do it that way."

The amended petition is insufficient to show that Downs acted with a specific malice or intent to personally inflict direct harm upon their client's adversary and with full knowledge that their conduct would cause such harm. Downs was simply the instrument through which the client invoked judicial determination, and they owed no duty to their client's adversary when acting on her behalf. This assignment of error lacks merit.

For the foregoing reasons, we find that the exception of no cause of action was properly sustained and the McDonalds' case dismissed.

### CONCLUSION

The judgment of the trial court sustaining the exception of no cause of action and dismissing the lawsuit filed by Robby and Annette McDonald

8

against Earl Ross Downs, Jr. and the Downs Law Firm, APLC, is affirmed.

Costs of this appeal are assessed to the McDonalds.

**AFFIRMED.**